IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEROME WASHINGTON, | : | |
| Plaintiff, | : | 1:16-cv-1828 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| MRS. BROWN, *et al.*, | : | |
| Defendant. | : | |

# **MEMORANDUM**

### September 24, 2018

Jerome Washington ("Washington" or "Plaintiff"), a Commonwealth of Pennsylvania inmate in the custody of the Pennsylvania Department of Corrections ("DOC") who, at all times relevant was incarcerated at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"), initiated this civil rights action on or about July 9, 2016, with the filing of a complaint pursuant to 42 U.S.C. § 1983, in the United States District Court for the Eastern District of Pennsylvania. (Doc. 1-2, p. 9, Doc. 1-7). The Eastern District transferred the matter to this Court on September 6, 2016. (Doc. 5).

Initially, Washington was directed to amend his complaint; he did so on December 21, 2016 (Doc. 15).[1] Therein, Washington names as defendants Governor Tom Wolf, Regional Deputy Secretary Steven Glunt, Officer Elijah

---

[1] The Court struck his first amended complaint and afforded him another opportunity to amend. (Docs. 11, 12).

Bennetch, Officer Sean Kyle, Officer Edward Brizuela (collectively referred to as "Commonwealth Defendants") Nurse Brown, and Mr. Bogio.

In the amended complaint, Washington alleges that Defendant Brown "unconstitutionally violated his mental health rights" by placing him in 24-hour segregation and isolation from May 9, 2016, through July 13, 2016, without any mental health treatment. (Doc. 15, ¶¶ 13, 14). Also, Brown allegedly placed him in a cell with lights on "24/7" and doors slamming, denied his request to "call the Judge" on May 10, 2016, deprived him of a bed, blanket, water and toilet paper from May 13, 2016 through May 25, 2016, and denied him due process with respect to a transfer petition. (*Id.* at 13-21).

With respect to the Commonwealth Defendants, Washington alleges that Defendant Bennetch deprived him of breakfast and lunch on May 13, 2016, and maliciously informed other officials on June 30, 2016, and July 4, 2011, of his intent to initiate a lawsuit against SCI-Camp Hill. (*Id.* at 22-24). Defendant Kyle allegedly refused him breakfast on June 29, 2016, and July 4, 2016, and denied him paper and pens which hindered his ability to answer legal mail. (*Id.* at 25-29). Defendant Brizuela allegedly refused him breakfast and lunch on June 27, 2016, and deprived him of a shower and exercise in the yard on June 27, 2016. (*Id.* at 30, 31). Defendant Glunt in his capacity as the facility superintendent, and Defendant

Wolf, as the governor, allegedly "turn [sic] a blind eye" to the unconstitutional violations of the aforementioned defendants. (*Id.* at 34-39).

Washington alleges that he "used the prisoner's grievance procedure available at SCI-Camp Hill…to try and solve the problem and try to grievance to final appeal." (*Id.* at 61).

On April 9, 2018, because the issue of administrative exhaustion was raised in pending motions (Docs. 23, 25), in light of *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden County*, 728 F.3d265 (3d Cir. 2013), the Court provided the parties notice and an afforded them an opportunity to be heard on the issue of administrative exhaustion. (Doc. 37). Also, Defendant Brown's motion (Doc. 25) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) was converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 37). In accordance with the Court's Order, Defendant Brown filed a supplemental brief (Doc. 40) in support of her motion to dismiss/motion for summary judgment and a statement of material facts and exhibits (Doc. 46). The Commonwealth Defendants refiled their motion (Doc. 23) as a motion (Doc. 44) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or for summary judgment pursuant to Federal Rule of Civil Procedure 56 based on Washington's failure to exhaust administrative remedies. (Doc. 44). Defendants' motion is

supported by a brief (Doc. 45), statement of material facts (Doc. 46) and appendix (Doc. 47). Washington filed declarations (Docs. 51, 65), briefs in opposition (Docs. 50, 56, 57, 66, 67), exhibits (Doc. 68), and statement of material facts (Doc. 78). For the reasons that follow, the Court will grant the motions for summary judgment based on Washington's failure to exhaust his administrative remedies. The complaint against Mr. Bogio will be dismissed pursuant to Federal Rule of Civil Procedure 4(m), based on Washington's failure to provide the Court with an accurate address, as ordered, for purposes of effecting service. (Docs. 35, 38).

I. **STANDARD OF REVIEW**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect

4

the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Celotex.* at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## II.   STATEMENT OF MATERIAL FACTS

The DOC's Administrative Directive DC-ADM 804 ("DC-ADM 804"), entitled "Inmate Grievance System," establishes a three-tiered system to ensure that inmates have an avenue through which to resolve issues relating to their incarceration. (Doc. 41 ¶¶ 4, 5; Doc. 46, ¶¶ 2, 3; Doc. 41-2, pp. 1- 34: Doc. 78). Pursuant to the DC-ADM 804, prior to filing an official grievance, an inmate is encouraged to attempt informal resolution with the Unit Manager or Officer-in-Charge. (Doc. 41-2, p. 6). If informal resolution is unsuccessful, the inmate may then file an initial grievance with the Facility Grievance Coordinator at the facility where the grievance event took place within fifteen working days of the event on

which the grievance is based. (Doc. 41, ¶¶ 6, 74; Doc. 46, ¶¶ 3, 4). The relevant version of DC-ADM 804 requires the grievance adhere to the following:

> 12. The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
>    a. The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.
>
>    b. The inmate shall identify individuals directly involved in the event(s).
>
>    c. The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.
>
>    d. If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.

(*Id.* at 8, 9; *Id.* at 4; Doc 41-2, p. 7). The statement of facts must not exceed two pages. (Doc. 41-2, p. 8). Any grievance based on separate events must be presented separately, unless it is necessary to combine the issues to support the claim. (*Id.*) "If the Facility Grievance Coordinator determines that the grievance is not properly submitted according to this procedures manual, it shall be rejected and returned to the inmate with a Grievance Rejection Form (Attachment 1-C) enumerating the reason(s) the grievance is rejected." (*Id.* at p. 10). The policy also states: "If a grievance is rejected, the grievance may be re-submitted, using the

same grievance number, within five working days of the rejection notice date. a. A rejected grievance may only be re-submitted one time. b. Additionally, the inmate may appeal the rejection to the Facility Manager in Accordance with Section 2 of this procedures manual." (*Id.* at 8).

If the inmate is dissatisfied with the initial review of his or her grievance, he or she may file an appeal of the decision with the Facility Manager within fifteen working days from the date of the initial review response. (*Id.* at 13; *Id.* at 5; Doc. 41-2, p. 16). The appeal is to be clearly labeled as an appeal, is to include the grievance number, and is not to exceed two pages. (Doc. 41, ¶ 14; Doc. 41-2, p. 16). Within fifteen working days, the Facility Manager shall notify the inmate of his or her decision. (Doc. 41-2, p. 17). Upon receiving a decision from the Facility Manager, an inmate may, within fifteen working days, submit an appeal to the final level of review, the Chief Grievance Officer, Secretary's Office of Inmate Grievances and Appeals (SOIGA). (Doc. 41, ¶¶ 18-20, 23; Doc. 46, ¶ 6; Doc. 41-2, p. 19). Only those issues appealed to the Facility Manager may be appealed to final review. (Doc. 41, ¶ 21; Doc. 41-2, p. 19). "An appeal to Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review and for Appeal to the Facility Manager." (Doc. 41, ¶ 22; Doc. 41-2, p. 19). SOIGA ensures that an appeal to Final Review is responded to within

thirty working days of receipt unless otherwise extended.  (Doc. 41-2, p. 31).

"SOIGA will issue a decision with one of the following dispositions:  Uphold Response, Uphold Inmate, Dismiss, or Uphold in Part/Deny in Part."  (Doc. 41-2, p. 22).

DOC Grievance Coordinator Tonya Heist ("Heist") gathered from the DOC's Automated Inmate Grievance Tracking System those grievances filed by Washington from May 9, 2016, through July 13, 2016, the time period during which he was incarcerated at SCI-Camp Hill.  (Doc. 46, ¶¶ 7, 8).  Pertinent to the instant action are Grievance Numbers 630387, 630425, 632533, and 632543.[2]  Heist rejected each of the grievances "due to a failure to comply with the provisions of DC-ADM 804."  (*Id.* at 8; Doc. 47, pp. 15, 19, 21, 23; Doc. 78, pp. 3-8).  The reasons cited for rejecting the grievances included failure to sign and/or date the grievance with correct commitment name and number or to submit the grievance in the proper format, failure to submit a grievance that is legible and understandable, inclusion of more than a single event in the grievance, and failure to submit the grievance in a timely fashion. (Doc. 47, pp. 15, 19, 21, 23).  He appealed Grievance Numbers 630387 to the Facility Manager.  (Doc. 46, ¶ 9; Doc.

---

[2] Washington also filed Grievance Number 630218 while at SCI-Camp Hill. However, the grievance involves events that took place at SCI-Graterford and is not pertinent to the instant action. (Doc. 47, p. 11).

9

47, p. 17). In denying Washington's appeal of 630387, the Facility Manager stated "I find the Grievance Coordinator properly rejected your grievance as your original grievance was not understandable. You also did not specify the date of the incident, and you combined numerous complaints on one grievance. You must keep in mind that grievances based on different events must be presented separately." (Doc. 47, p. 17).

Michael Bell, Grievance Officer with SOIGA, indicates that of all the grievances filed between May 2016 and December 2016, Washington did not properly appeal a single grievance through the final review process. (Doc. 41, ¶¶ 25-28). On July 8, 2016, Washington submitted to SOIGA an inmate appeal to final review containing references to Grievance numbers 630387, 630425, and 632542. (Doc. 78-1, pp. 4, 5). Also on July 8, 2016, submitted appeals of Grievance Numbers 632533 and 630218 to SOIGA. (Doc. 41-5, p. 1; Doc. 78-1, p. 2). On July 14, 2016, SOIGA advised him that appealing two grievances at the same time violated the policy. (Doc. 41, ¶ 33; Doc. 41-5, p. 1; Doc. 78-1, p. 2). Additionally, SOIGA notified him that there was no record of an appeal of 632533 to the Facility Manager and reminded him that SOIGA conducts Final Review only. (*Id.* at 32; *Id.*; *Id.*) As concerned 630218, SOIGA informed him that the appeal exceeded the two-page appeal limit and did not contain the documents

required by the administrative review process. (*Id.* at 32, 34; *Id.*; *Id.*) SOIGA afforded him the opportunity to resubmit the proper documentation for the appeal of 630218 (the grievance concerning events not relevant to this action). (*Id.*, *Id.*). Washington failed to do so. (Doc. 41, ¶ 35).

Washington also filed grievances concerning events or incidents that occurred at institutions other than SCI-Camp Hill. (Doc. 41, ¶¶ 36-60, Doc 41-6 through 41-14). On several occasions, SOIGA responded to submissions by Washington indicating that his intent in sending grievances directly to SOIGA is unclear, informing him that the office conducts final review only, advising him that inmates must follow all steps set forth in DC-ADM 804 prior to appealing to SOIGA, and encouraging him to review the policy for clarity. (Doc. 41, ¶¶ 67, 68, 75; Doc. 41-16, pp. 1, 3). Specifically, prior to his incarceration at SCI-Camp Hill, on March 1, 2016, SOIGA responded to Washington's appeal of Grievance Numbers 612946, 613871, 613890, 613905, 613928, 613937, and 613943 stating, "Mr. Washington, this office conducts Final Review only and Inmates must follow all steps as outlined in the DC ADM 804 prior to appealing to this office. You are encouraged to review the policy for clarity. As of this date, there is no record of you appealing any of these grievances to the Superintendent. Please adhere to the directive above. Contrary to what you may believe, you are not being denied

administrative remedies. You must follow proper procedure. Future correspondence regarding these grievances/issues may be filed without action or reply." (Doc. 41-6).

On November 7, 2016, the Facility Manager at SCI-Greene, denied Grievance Number 647349. (Doc. 41-14, p. 6; Doc. 78-1, p. 11). Washington appealed to SOIGA. On November 16, 2016, SOIGA notified Washington that he had fifteen days to submit documentation necessary for conducting final review. (Doc. 41-4, p. 2; Doc. 78-1, p. 9). The notice specified that Washington must provide a legible copy of the initial grievance, signed and dated, the initial review response/rejection by the Grievance Officer, a legible copy of the appeal to the Facility Manager, signed and dated, and the Facility Manager's decision/response. (*Id.*; *Id.*) On December 5, 2016, Washington sent a letter to SOIGA indicating that he is alleging that he has been denied medical treatment at SCI-Greene for the following ailments: significant knee problems; glaucoma and cataracts; hemorrhoids; elbow problems, including arthritis; spinal issues; abnormal growth of female breasts; high blood pressure; dislocated left shoulder; and stomach tissue problems. (Doc. 41-14, pp. 3, 4). On December 12, 2016, SOIGA dismissed the appeal because he failed to provide the required documentation. (Doc. 41-14, p. 1).

On July 9, 2016, Washington signed his original complaint. (Doc. 1-2, p. 9). The original complaint arrived at the United States District Court for the Eastern District of Pennsylvania on July 15, 2016, in an envelope with a postage stamp dated July 12, 2016, bearing Washington's SCI-Camp Hill address. (*Id.* at 1-1, 1-2, 1-7).

### III. DISCUSSION

Defendants seek an entry of summary judgment on the grounds that Washington failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" *Id.* "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation

13

impervious to judicial discretion").” *Id.* at 1856-57. Administrative exhaustion must be completed prior to the filing of an action. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).

Significantly, "the PLRA contains its own, textual exception to mandatory exhaustion," i.e. the PLRA requires exhaustion of "available" administrative remedies. *Id.* at 1858. "Available" is defined as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." *Id.* at 1858-59, (quoting *Booth v. Churner*, 532 U.S. 731, 737-38 (2001)). There are three instances in which administrative remedies are unavailable. "First, as *Booth* made clear, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end– with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* at 1859. "Next an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93

(2006). An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. *Id.* at 83–84. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Id.* at 93 (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). The requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." *Woodford*, 548 U.S. at 83; *see also Spruill v. Gillis*, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 211–212 (2007).

Finally, whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d.

265, 268 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010). However, the Court must notify the parties that it will consider exhaustion in its role as a factfinder and afford the parties the opportunity to be heard. *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018). On April 9, 2018, the Court notified the parties that it would consider exhaustion in its role as a factfinder and afforded the parties the opportunity to supplement the record with evidence relevant to the issue of exhaustion of administrative remedies. (Doc. 37).

On July 8, 2016, Washington submitted two Inmate Appeals to Final Review, one containing appeals of Grievance Numbers 632533 and 630218 (Doc. 78-1, p. 2), and the other appealing Grievance Numbers 630387, 630425 and 632543 (*Id.* at 4). On July 9, 2016, the date Washington signed his complaint, and July 12, 2016, the date he mailed his complaint, he had not yet completed the administrative review process for any of the SCI-Camp Hill grievances. Neither appeal had been addressed by SOIGA at the time Washington pursued relief in federal court. Clearly, Washington failed to exhaust his administrative remedies prior to bringing suit.

Washington concedes that the failed to exhaust his administrative remedies with respect to the grievances concerning the conditions at SCI-Camp Hill, Grievance Numbers 630387, 630425, 632533, and 632543. However, he argues

16

that exhaustion should be excused because the administrative process was rendered unavailable for a multitude of reasons. (Docs. 50, 51, 56, 57, 66, 67, 78). Several of the arguments, specifically, that he was indigent and therefore unable to mail appeals to SOIGA, that he was deprived access to the law library, and that the denial of his grievances were retaliatory, are rejected outright as they are wholly unsupported, conclusory, and have no support in the record. Two of his argument warrant more in depth discussion.

First, he argues that his July 13, 2016 transfer from SCI-Camp Hill to SCI-Greene rendered his SOIGA appeals unavailable. The argument lacks merit. Washington signed the original complaint in this matter on July 9, 2016, and the mailing envelope that contained his original complaint bears a July 12, 2016 postmark. (Doc. 1-7). The envelope also bears his return address of SCI-Camp Hill. (*Id.*) This demonstrates that he commenced this action before his transfer to SCI-Greene and that the transfer had no impact Washington's access to the administrative remedy process. It also demonstrates that he executed and mailed his federal complaint within approximately five days of the day he penned his SOIGA appeals, well before the expiration of the thirty working days that SOIGA had to address the appeals, which is completely contrary to the PLRA requirement

that administrative remedies be exhausted prior to commencement of a federal civil action.

He also argues that the rejection of his grievances by Grievance Coordinator Heist rendered the administrative review process unavailable. Heist rejected the grievances based on Washington's failure to comply with certain enumerated procedural requirements of DC-ADM 804, including, failure to sign and/or date the grievance with correct commitment name and number or submit the grievance in the proper format, failure to submit a grievance that is legible and understandable, failure to limit the grievance to a single event, and failure to submit the grievance in a timely fashion. (Doc. 47, pp. 15, 19, 21, 23).

DC-ADM 804 clearly states that when a grievance is rejected, an inmate may either resubmit the grievance within five working days or appeal to the Facility Manager. Washington wholly failed to comply with this directive with respect to Grievance Numbers 630425, 632533, and 632543. Instead of either resubmitting the grievances to the Grievance Coordinator, or appealing them to the Facility Manager, in direct contravention of the procedural requirements set forth in DC-ADM-804, he leapfrogged the interim levels of the process and sought relief from the SOIGA.

Washington chose to appeal Grievance 630387 to the Facility Manager. The Facility Manager upheld Heist's decision to reject the grievance concluding that, as submitted, it was unable to be understood and lodged numerous complaints based on different events. Washington then submitted an appeal to SOIGA. However, he failed to wait for a decision on the appeal, choosing, instead, to proceed directly to federal court.

The record is devoid of evidence that Heist or any other prison official was consistently unwilling to provide relief to aggrieved inmates, that the rejections of the grievances or appeals rendered the process incapable of use, or that Washington was thwarted from taking advantage of the grievance process through machination, misrepresentation, or intimidation. (Doc. 41, ¶¶ 67, 68, 75; Doc. 41-4, p. 2; Doc. 41-5, p. 1; Doc. 41-6, pp. 1-3; Doc. 41-16, pp. 1-3; Doc. 47, pp. 15, 19, 21, 23). The evidence of record demonstrates that the grievances were rejected for failure to comply with the critical procedural rules set forth in DC-ADM 804, and that Washington initially failed to comply with those rules and subsequently failed to take corrective action to facilitate proper exhaustion of administrative remedies.

For the reasons set forth above, it is concluded that the record demonstrates that the DOC's administrative review process was available to Washington and

that he failed to exhaust that process prior to commencement of this action. Accordingly, Defendants' motions (Docs. 25, 44) for summary judgment will be granted.

## IV. **CONCLUSION**

Contemporaneous with this Memorandum, the Court will issue an Order granting Defendants' motions (Docs. 25, 44) for summary judgment pursuant to Federal Rule of Civil Procedure 56, and dismissing the complaint against Mr. Bogio pursuant to Federal Rule of Civil Procedure 4(m).